UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD LEVON,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

Criminal No. 01-80308
Civil No. 06-12651

Hon. John Corbett O'Meara

## OPINION AND ORDER DENYING PETITIONER'S MOTION TO VACATE SENTENCE

Before the court is Petitioner's motion to vacate sentence pursuant to 28 U.S.C. § 2255, which has been fully briefed. Petitioner has also filed fifteen additional motions, including motions for discovery, bond, an evidentiary hearing, a new trial, and summary judgment. After careful review of the record, the court has determined that an evidentiary hearing is not necessary.[1] For the reasons set forth below, Petitioner's motion to vacate is denied. Petitioner's remaining motions are denied as moot.

## BACKGROUND FACTS

### I. Procedural History

After a jury trial, Petitioner Todd Levon was convicted of conspiring to manufacture 100 or more marijuana plants and felon in possession of a firearm, aiding and abetting. The government presented evidence that Levon, along with his brother Bruce Levon, operated

---

[1] With respect to § 2255 motions, "evidentiary hearings are not required when, as here, the record conclusively shows that the petitioner is entitled to no relief." Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996) (citing Fontaine v. United States, 411 U.S. 213, 215 (1973)).

marijuana grow houses from 1993 to 2001. At trial, Levon was represented by Timothy Barkovic. After the trial, the court permitted Levon to retain new counsel, Harold Gurewitz.

At the sentencing hearing in November 2003, the court concluded that Levon's offense conduct involved 700 to 1,000 plants, that Levon should receive a four-level enhancement for being a leader of an offense involving five or more participants, and that a two-level firearms enhancement should apply. In the presentence report, the probation office recommended that the court find that Levon qualified as a career offender. If the court found Levon to be a career offender, he would have faced a guideline range of 360 months to life imprisonment. Based upon objections filed by Levon's attorney, however, the court found that Levon did not so qualify. As a result, Levon faced a sentencing guideline range of 97 to 121 months. However, a statutory minimum sentence of ten years applied because of the quantity of marijuana found by the jury and Levon's previous felony drug conviction. See 21 U.S.C. § 841. The court sentenced Levon to 120 months in prison as to each count, to run concurrently, and eight years of supervised release.

Levon appealed his conviction and sentence. On appeal, Levon was represented by new attorneys, Alan Ellis, James Gelman, Jr., and Peter Goldberger. Levon raised three issues on appeal: (1) whether the Speedy Trial Act was violated; (2) whether the felon in possession conviction should be reversed because Bruce Levon's civil rights had been restored; and (3) whether Levon's sentence should have been enhanced based on a prior conviction that was not presented to the jury.

The Sixth Circuit upheld Levon's conviction and sentence for conspiracy to manufacture marijuana. The court reversed the conviction for aiding and abetting the possession of a firearm

by a felon.  Levon filed a motion for rehearing, which was denied.  Levon also filed a petition for writ of certiorari to the Supreme Court, which was denied.  Levon then filed a motion for rehearing, which was denied on January 26, 2006.

Subsequently, Levon filed his motion to vacate sentence pursuant to 28 U.S.C. § 2255.  Levon presents an extensive list of claims in his motion, most of which can be grouped into two categories.[2]  Levon's first basic claim is that his trial, sentencing, and appellate attorneys were ineffective because they did not investigate or present/appeal a withdrawal defense.  (See Petition at A, B1, B2, B3, B4, C1, C6, D1, D5, N, and O.)  Essentially, Levon argues that he withdrew from the marijuana conspiracy more than five years before the indictment was filed on August 21, 2001.  As a result, Levon claims that the conspiracy charge is barred by the statute of limitations.

Levon's second basic claim is that his attorneys were ineffective because the jury should have been instructed regarding how to determine whether a marijuana clone or cutting constitutes a marijuana "plant."  (See Petition at B6, B7, B8, B9, B10, B11, C2, C3, C4, D2, D3,

---

[2] Levon identifies his claims by the letters A through O.  The claims that do not fit into the two basic categories can be addressed briefly.  These claims include B5 and E, which relate to his conviction for aiding and abetting the possession of a firearm by a felon.  This conviction was overturned by the Sixth Circuit; thus, these claims are moot.  In claim C5, Levon states that his sentencing attorney did not request that he be assigned to a community corrections facility.  However, Levon was not eligible for community confinement.  See U.S.S.G. § 5F1.1 (community confinement limited to probation or supervised release).  In claim M, Levon claims he was denied a fair trial because the police were wiretapping his telephones.  However, no evidence was introduced at trial as a result of the alleged wiretapping.  As a result, Levon was not prejudiced by the alleged wiretapping; this argument cannot serve as a basis for his § 2255 motion.  Lastly, in claim D4, Levon asserts his appellate counsel was ineffective for failing to request remand in light of U.S. v. Booker, 125 S.Ct. 738 (2005) (holding the Sentencing Guidelines to be effectively advisory).  Booker does not, however, apply to Levon's case, as he was sentenced to the statutory minimum, thereby rendering the Sentencing Guidelines effectively moot here.

F, G, H, I, J, K, and L.) Levon argues that if the jury had been properly instructed, it would have not found that his offense involved 100 or more marijuana plants. According to Levon, some of the 102 plants seized during one of the DEA raids did not have a root system and did not count as "plants."

## II.     Evidence Produced at Trial

Several witnesses testified at trial that Todd Levon and Bruce Levon worked together to grow, process, and sell marijuana from 1993 to 2001. Both Todd Levon and Bruce Levon owned "grow houses" where they grew and harvested marijuana plants. At least seven witnesses testified that they observed or lived in Todd Levon's grow houses and helped Levon process marijuana. See, e.g., TR Vol. II at 303-312 (Robert Persinger); TR Vol. II at 377-79, 386 (Suzanne Persinger); TR Vol. II at 422, 427-28, 443-46 (Carl Snyder); TR Vol. III at 484-87, 490-94 (Mike Kalinowski); TR Vol. III at 521-30 (Russell McBeth); TR Vol. III at 590-94 (Linda Zieldorff); and TR Vol. III, 631, 641 (Janet Shereda).

Witnesses also testified that Todd Levon and Bruce Levon operated grow houses together and shared equipment and plants. See, e.g., TR Vol. II, at 310, 316, 329-31, 353 ®. Persinger); TR Vol. III at 631-42 (J. Shereda). A number of witnesses testified that they worked for both brothers, doing jobs ranging from maintenance of houses to harvesting and trimming marijuana plants. See, e.g., TR Vol. III at 598-600 (L. Zieldorff); TR Vol. III at 482-92 (M. Kalinowski); TR Vol. III at 631-34 (J. Shereda). In return for their services, these witnesses testified that Levon and his brother paid them in cash and marijuana. See, e.g., id.

As a result of information provided by Robert Persinger, the DEA conducted a raid on a house located at 12070 Longview Street in Detroit on February 2, 2000. The DEA found a

marijuana grow operation there and seized 102 marijuana plants. The DEA conducted another search at a house owned by Bruce Levon on 3911 Nevada Street in Detroit on April 10, 2001. There agents discovered another grow operation and seventeen marijuana plants. See TR. Vol. I at 151-67, 181-82, 188-89 (Special Agent Chad Esch).

Levon's attorney presented testimony from thirteen witnesses, including Montclair Jones, Jeffrey Allen Kuptz, Cathy Lange, Cherie Stickles, John Renuad, David J. Waldo, Daniel Guntenaar, David Kot, Peter Ivan Dragicevic, Walter Levon, Paul Hart, and Daniel Kot. Many of these witnesses testified that they worked for Levon, including cleaning and maintaining his houses, and that they observed no evidence of marijuana grow operations. Upon cross-examination, at least two government witnesses testified that Levon "got out of the business" of growing marijuana as of 1993 or 1996. See TR Vol. III at 575 (M. Isaacs); TR Vol. III at 619 (L. Zieldorff). After discussion with his attorney, Levon chose not to testify. TR Vol. VI at 1050.

## LAW AND ANALYSIS

### I. Standard of Review

Levon asserts that his right to effective assistance of counsel was violated. In order to establish a violation of the Sixth Amendment right to effective assistance of counsel, Levon must demonstrate that "counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it proved unsuccessful, to conclude that a particular act or omission was unreasonable." Id. at 689. In determining whether counsel's performance was

deficient, the court must decide "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690.

> In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 466 U.S. at 690.

In addition to demonstrating deficient performance, the defendant must show that his defense was prejudiced. The defense was prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

## II. Withdrawal Defense

Levon argues that his various attorneys were ineffective because they failed to investigate, present, and/or appeal a withdrawal defense to the drug conspiracy charge. Levon contends that he told co-conspirators Mark Isaacs and Bruce Levon that he intended to stop growing and selling marijuana in May 1996. See Affidavits of Bruce Levon, Mark Isaacs. According to these witnesses, Levon told them that "he was sick and tired of all the work one has to do to grow and sell marijuana and that he did not want anything more to do with it." Id. After consultation with his attorney, however, Levon chose not to testify at trial regarding his alleged withdrawal.

Withdrawal from a conspiracy is an affirmative defense. United States v. Lash, 937 F.2d

1077, 1083 (6th Cir. 1991). "In order to establish withdrawal, a defendant must show that he or she took affirmative action to defeat or disavow the purpose of the conspiracy. Mere cessation of activity is not sufficient." Id. The withdrawal from the conspiracy must be complete and in good faith. See United States v. Bullis, 77 F.3d 1553, 1562-63 (7th Cir. 1996). If a defendant's post-withdrawal conducts shows that he continues to acquiesce in the goals of the conspiracy, "it would neutralize his otherwise valid withdrawal." Id. at 1563. Withdrawal is a complete defense to a conspiracy charge only if the defendant withdraws outside the statute of limitations period (in this case, more than five years from the issuance of the indictment).

In light of all the circumstances, the court finds that Levon's attorneys presented a vigorous defense that was not "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Contrary to Levon's argument, his trial counsel did pursue the withdrawal defense. Prior to trial, Levon's counsel filed a motion to dismiss the indictment based upon Levon's alleged withdrawal from the conspiracy and the running of the statute of limitations.[3] The court denied the motion without prejudice at the beginning of the trial. See TR Vol. I at 6-7. Levon's counsel raised the statute of limitations issue again at the close of the government's case. TR Vol. IV at 742-43. The issue of withdrawal and the statute of limitations was addressed again during argument regarding the jury instructions. TR Vol. VI at 1014-20. At that point, Levon's counsel indicated that he was not arguing withdrawal and did not want the withdrawal instruction given. Id. at 1016. After consideration of the withdrawal pattern jury instruction, the court found "there's been no evidence of Defendant's withdrawal from the

---

[3] Although Levon maintains that his attorney did not understand the law with respect to withdrawal, a review of the motion to dismiss makes clear that his attorney did understand it and correctly stated it to the court. See Docket No. 71.

alleged conspiracy." Id. at 1048.  The court additionally noted that "the issue of withdrawal has been waived by the defendant as part of the statute of limitations defense," although this was clearly not the only basis for its ruling.  Id.  The court then elected not to give the withdrawal jury instruction.

Although Levon's trial attorney stated at one point that he was not arguing withdrawal, the court did consider the argument.  The court ultimately rejected the argument and declined to give a withdrawal instruction because "there's been no evidence of Defendant's withdrawal from the alleged conspiracy."  TR Vol. VI at 1048.  Indeed, the evidence presented at trial demonstrated Levon's continued involvement in the conspiracy after the statute of limitations date (August 1996).

For example, during the period from 1997 to 2000, witnesses testified that Levon stated he had marijuana available and attempted to recruit people to live at a grow house.  See TR Vol. II at 335-38 (R. Persinger); TR Vol. II at 382-87 (S. Persinger).  Other witnesses testified that Levon smoked and distributed marijuana during this time period.  See TR Vol. III at 461, 477-78 (C. Snyder); TR Vol. III at 529 (R. McBeth); TR Vol. III at 596-97, 618-20 (L. Zieldorff).  Linda Zieldorff testified that she processed marijuana for Levon between 1996 and 1998.  TR Vol. III at 593-94, 596-97, 618-20.  Carl Snyder testified that he observed bags of marijuana in the garage at Levon's residence in 1998 or 1999.  TR Vol. III at 478.

Given this evidence, and the lack of evidence of withdrawal, Levon's appellate attorneys made a reasonable strategic decision to press other, more meritorious arguments on appeal.  For example, Levon's appellate attorneys were successful in getting his firearm conviction reversed.

Levon's sentencing counsel did raise the issue of the withdrawal defense in his motion for downward departure.  See Docket No. 98 (seeking downward departure based upon the argument that Levon removed himself from marijuana grow operations after 1996).  Although the court did not accept this argument, Levon's sentencing counsel was successful in persuading the court that Levon should not be considered a career offender, thus greatly reducing his sentence from 360 months to life to the statutory minimum of 120 months.  Levon's sentencing counsel was, in this respect, quite effective.

Levon contends that his trial counsel failed to investigate the withdrawal defense and should have elicited additional testimony regarding it.  According to Levon, Mark Isaacs and Bruce Levon would have testified that Levon told them that he "was sick and tired of all the work one has to do to grow and sell marijuana and that he did not want anything more to do with it."  Levon's trial counsel did elicit testimony from Mark Isaacs that Levon "got out of the business" in 1993 and that "he wanted to stop all that stuff." TR Vol. III at 575-80.  Further, Levon's trial counsel did interview Bruce Levon.  Bruce Levon contends that he told Levon's trial counsel that "Todd had nothing to do with my houses that got raided by the DEA and that Todd got out of the marijuana business in 1996." See Affidavit of Bruce Levon.

This evidence, as well as the fact that he did present a withdrawal defense, shows that Levon's trial counsel did not fail to investigate this matter.  Levon challenges what are essentially strategic decisions (not calling either Levon or his brother to testify).  Such challenges cannot form a basis for an ineffective assistance of counsel claim.  See Buell v. Mitchell, 274 F.3d 337, 360 (6th Cir. 2001) ("To the extent that Buell believes his counsel should have undertaken a different strategy in conducting the investigation and determining how best to

advocate on Buell's behalf, these are tactical decisions that cannot form the basis for an ineffective assistance claim.").

In sum, the court finds that Levon's trial, sentencing, and appellate attorneys did not perform in a deficient manner in the way they addressed or chose not to address the withdrawal defense. Even if, for the sake of argument, Levon's trial counsel could be said to be deficient by failing to elicit testimony that Levon was "sick and tired" of growing marijuana and intended to exit the business, Levon cannot demonstrate that this alleged failure prejudiced the defense. First, similar testimony was elicited from Mark Isaacs at trial. Second, the testimony does not establish a complete and good faith withdrawal, particularly in light of the evidence of Levon's continued involvement after 1996. This proffered testimony does not establish a "reasonable probability" that the result of the proceeding would have been different, nor does it undermine the court's confidence in the outcome of the trial. Accordingly, the court finds that Levon cannot establish an ineffective assistance claim regarding the withdrawal defense.

### III. Definition of Marijuana Plants

Levon's second general claim is that his attorneys were ineffective in failing to press the argument that the jury should have been instructed regarding what constitutes a marijuana "plant" under the law. Levon contends that if the jury had been properly instructed, the jury would not have found that his offense involved 100 or more marijuana plants. It appears that Levon bases this claim on the seizure of 102 marijuana plants from the Longview residence. According to Levon, some number of those plants did not have an established root system and thus did not count as "plants" under the law.

Levon's argument is without merit. The 102 marijuana plants seized from the Longview

house were only a piece of the evidence regarding the number of marijuana plants established at trial. The evidence demonstrated that Levon was involved in growing hundreds of marijuana plants over a period of years. See, e.g., TR Vol. II at 422-25 (45 plants each cycle for six cycles, or 270 plants); TR Vol. III at 488-89 (an additional 30 or 40 plants); TR Vol. III at 494-95 (an additional 30 plants); TR Vol. III at 631-42 (at least four grow houses producing 30 plants every 90 days). Based upon the evidence presented at trial, at sentencing the court determined that Levon's offense involved 700 to 1,000 marijuana plants.

Because of the evidence regarding the significant number of plants at issue, Levon's attorney made the reasonable tactical decision not to fight about what constituted a "plant" or whether certain plants had root systems or "root hairs." In light of the evidence, a jury instruction on the definition of a marijuana plant was unnecessary. An attorney's failure to raise a futile argument does not constitute ineffective assistance of counsel. Harris v. United States, 204 F.3d 681, 683 (6th Cir. 2000).

**ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Levon's motion to vacate sentence [docket # 214] is DENIED.

IT IS FURTHER ORDERED that Levon's motions for discovery [docket # 220], evidentiary hearing [docket # 224], bail hearing [docket # 225], appointment of counsel [docket # 231], new trial [docket # 232], transfer to community correction center [docket # 241], for writ to Wayne County Jail [docket # 242], bond hearing [docket # 243], dismissal [docket # 246], summary judgment [docket # 254], judgment by default [docket # 259], for court to sign order granting motion [docket # 260], for sanctions [docket # 261], for evidentiary hearing [docket #

264], and for declaratory judgment [docket # 265] are DENIED.

Should Petitioner appeal from this order, the court declines to grant a certificate of appealability or *in forma pauperis* status, because Petitioner has not made a substantial showing of the denial of a constitutional right or that such an appeal would not be frivolous. See Fed. R. App. P. 22(b) (certificate of appealability); Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983); Hence v. Smith, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999); 28 U.S.C. § 1915(a)(3) (*in forma pauperis*); Fed. R. App. P. 24(a); Foster v. Ludwick, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

**SO ORDERED.**

                                      s/John Corbett O'Meara
                                      United States District Judge

Dated: July 23, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, July 23, 2007, by electronic and/or ordinary mail.

                                      s/William Barkholz
                                      Case Manager